Page 1

1            UNITED STATES BANKRUPTCY COURT
             SOUTHERN DISTRICT OF FLORIDA
2

3                  Judge Erik P. Kimball

4

5

   In Re:
6
                          Case No. 13-21573-BKC-EPK
7

8   TP5, LLC,

9        Debtor.

10  _____

11

12  MOTON FOR RELIEF FROM STAY (30); MOTION TO VACATE (29)

13

14

15                    July 25, 2013

16

17

18  The above entitled cause came on for hearing before
    the HONORABLE ERIK P. KIMBALL, one of the Judges in
19  the UNITED STATES BANKRUPTCY COURT, in and for the
    SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler
20  Drive, West Palm Beach, Palm Beach County, Florida, on
    July 25, 2013, commencing on or about 1:30 p.m., and
21  the following proceedings were had:

22

23

24

25       Reported by: Jacquelyn Ann Jones, Court Reporter

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

Page 2

```
 1   APPEARANCES:

 2

     LAW OFFICES OF BRETT ELAM, P.A.
 3   By: BRETT A. ELAM, ESQUIRE
     On behalf of the Debtor
 4

 5   ARNSTEIN & LEHR
     By: ANTHONY KANG, ESQUIRE
 6   On behalf of Trump Plaza Condominium Association
     (Appearing telephonically)
 7

 8   JONES WALKER
     By: RONALD D.P. BRUCKMAN, ESQUIRE
 9   On behalf of OB Real Estate Holdings

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  TP5, LLC.  Do I have Mr. Kang on

 2    the telephone?

 3              MR. KANG:  Yes, sir, Your Honor.  Anthony

 4    Kang from Arnstein and Lehr, on behalf of Trump Plaza

 5    Condominium Association.

 6              THE COURT:  Very good.

 7              MR. ELAM:  Good afternoon, Your Honor.

 8    Brett Elam on behalf of TP5.

 9              THE COURT:  Yes.

10              MR. BRUCKMAN:  Good afternoon, Your Honor.

11    Ronald Bruckman appearing on behalf of OB Real Estate

12    Holdings, 1732, LLC.

13              THE COURT:  Now, I have -- I had a motion

14    for relief from stay that was granted, and there's a

15    request to vacate that, and then there's a new motion

16    for relief from stay, which is adding on to the

17    initial one.

18              MR. ELAM:  Correct, Your Honor.

19              Your Honor, the previous motion, as

20    you stated, was granted based upon the debtor not

21    owning the property.  Pursuant to a property search I

22    did prior to the hearing, it didn't come up, the deed

23    transferring the property back to the debtor.

24    Subsequent to the hearing, I did -- was provided a

25    copy of the deed that the debtor did own the property
```

Page 4

1    at the time.  So we would like for you to vacate that

2    order.

3                As to any other relief, Your Honor, we

4    believe that this property is necessary for a

5    successful reorganization.  We believe that the debtor

6    can propose a confirmable plan, and that we would like

7    to get a chance to do so.

8                THE COURT:  What was the situation with that

9    deed, was it recorded?

10               MR. ELAM:  Yes, sir, it was.

11               THE COURT:  It was recorded before the

12   petition was filed?

13               MR. ELAM:  Yes, sir.

14               THE COURT:  And actually, when you look, it

15   shows the date stamp now that is before the petition

16   date.

17               MR. ELAM:  I attached it to my motion.  If I

18   can find it.

19               MR. BRUCKMAN:  I do have a copy.

20               THE COURT:  I'm just curious, what's the

21   date on the deed?

22               MR. ELAM:  The date recorded, Your Honor, is

23   at 10:30 in the morning on May 17th, 2013.

24               THE COURT:  And the petition date?

25               MR. ELAM:  It was May 17th in the afternoon.

Page 5

1          THE COURT:  All right.  So it was recorded

2    the same day.  At the initial hearing I got the

3    impression -- at the last hearing, I got the

4    impression that the property had been titled in what

5    would be the grantor under that deed for awhile, but

6    based on what I see in the more recent motion, it

7    appears that it only became titled in that entity's

8    name shortly before the filing of this case.  Is that

9    true?

10          MR. ELAM:  I believe so.

11          THE COURT:  So where did it come from before

12   that?

13          MR. ELAM:  It was -- before TP5?

14          THE COURT:  Yes.  Or before -- before the

15   entity that's the grantor in that deed, who's the

16   grantor?

17          MR. ELAM:  It was TP5.  It went from TP5 to,

18   I think Trans --

19          THE Court:  Okay.  And what preceded TP5?

20          MR. BRUCKMAN:  Transamerican Commercial

21   Limited.

22          THE COURT:  So it was the grantor to TP5,

23   and then it was the recipient OF title --

24          MR. BRUCKMAN:  I beg your pardon.  TP5

25   preceded Transamerican Commercial Limited.  The deed,

Page 6

1    as of the petition date, apparently gave it back to

2    TP5.

3              THE COURT:  And then what about before that,

4    before those three --

5              MR. ELAM:  I believe that it was purchased

6    from the actual builder at that time.

7              THE COURT:  All right.  So it's popped back

8    and forth between the two.

9              MR. ELAM:  Correct.

10             THE COURT:  Anything else you wish to tell

11   me?

12             MR. ELAM:  No, Your Honor.

13             MR. BRUCKMAN:  Your Honor, the ownership of

14   this collateral was just one of a number of grounds

15   which justified this Court's order granting relief

16   from stay.  The initial motion --

17             THE COURT:  Well, it was really easy at the

18   last hearing.  The stay doesn't apply.  Now the stay

19   applies, but --

20             MR. BRUCKMAN:  Yes, Judge.  The initial

21   motion filed at docket entry number 6, and also the

22   more recent motion filed at docket entry 30, that this

23   time actually asks for perspective in rem relief, both

24   lay out a history in both State Court and in

25   Bankruptcy Court, in other cases as well as this,

1    which chart really a quite remarkable series of events

2    and actions by both the debtor in this case, and the

3    debtor's principal, Mr. Siskin, to delay a foreclosure

4    sale.

5              And we would submit this time, just as

6    before, cause exists for stay relief to maintain -- to

7    remain in place based upon 362(d)(1) for bad faith,

8    362(d)(2), and also this time under 362(d)(4), based

9    on the series of events.

10             The foreclosure judgment was entered on

11   January 15th of this year, and it was entered after

12   the parties in the foreclosure case defaulted under a

13   forbearance agreement in the foreclosure action.  Once

14   the final judgment of foreclosure was entered, we've

15   seen a motion for reconsideration denied in the State

16   Court, we've seen an individual bankruptcy case by the

17   guarantor, which the guarantor then on numerous

18   occasions sought to assert stay of the foreclosure

19   action against non-debtor parties.

20             We've actually seen a notice of removal of

21   the entire State Court action the morning of the

22   initial foreclosure sale to this Bankruptcy Court.

23   That was promptly denied, but it was later followed by

24   two emergency motions to stay the second foreclosure

25   sale, which were also later denied.

1          And Your Honor, this bankruptcy filing --

2     really the transfer of the property the day of the

3     petition actually provides additional grounds for stay

4     relief, because it bolsters the argument in support of

5     362(d)(4) by showing it's nothing more than a series

6     of events to delay the foreclosure sale.

7          We're two months into this case.  There is

8     not a hint of reorganization.  The debtor has

9     scheduled no income for the previous two years.  The

10    two monthly operating reports filed for May and June,

11    I think show total operating income of $100 in May and

12    $848 in June.

13          There's a question whether there's going to

14    be enough here to pay the U.S. Trustee's fees, let

15    alone make any payments at all to a secured

16    creditor.

17          So we would ask that the motion to vacate

18    the order granting stay relief be denied.  And we

19    would also ask that the Court grant in rem relief so

20    that the property can't be transferred again to

21    another entity resulting in another bankruptcy on the

22    eve of the sale, which is currently set for August

23    21.

24          THE COURT:  Thank you.  Now, Mr. Elam,

25    there's a foreclosure judgment of 1.5 million.

Page 9

1          MR. ELAM:  Yes, sir.

2          THE COURT:  And the debtor valued this

3   property at half a million dollars.  Given the income

4   that's generated by the debtor, how can there be a

5   plan in this case?

6          MR. ELAM:  Well, Your Honor, actually since

7   the petition the debtor has obtained three separate

8   tenants in the building.  Two of the tenants were

9   providing $8300 worth of income, and the new tenant

10  that I've just learned about today is going to provide

11  $1350, which is a total of about 99,550, and I believe

12  that if you take the 400,000 and reamortize it over a

13  commercially reasonable time, I think that the debtor

14  can provide a confirmable plan.

15         THE COURT:  A confirmable plan you mean in

16  terms of feasibility.

17         MR. ELAM:  Yes, sir.

18         THE COURT:  I'm focusing on how voting could

19  possibly result in a confirmable plan in this case.

20         MR. ELAM:  I believe that there is one class

21  of secured creditors.  I think it's the IRS that we

22  think we can get the vote for us and cram down the

23  rest.

24         THE COURT:  So you're going to impair the

25  secured tax claim, that's what you're saying?

1          MR. ELAM:  Yes, sir.

2          THE COURT:  And thereby create one impaired

3   accepting class and cram down the unsecured creditors'

4   class in this case, that's the basis for this?

5          MR. ELAM:  Yes.

6          THE COURT:  All right.  So now we have a

7   situation where Mr. Siskin attempted to get Judge

8   Hyman to prevent the foreclosure on this property.  He

9   tried several times.  You're not representing him, are

10  you?

11         MR. ELAM:  No.  No.  No.  I want to make

12  sure that's clear for the record.

13         THE COURT:  And that didn't go very well for

14  him.  In fact, I believe he was sanctioned.

15         And then the property like a hot potato gets

16  transferred now, I learn, to this debtor, where

17  there's another filing to prevent a foreclosure from

18  moving forward.  Doesn't that perfectly match the

19  provisions of 362(d)(4)?

20         MR. ELAM:  Your Honor, but I believe that

21  TP5 has always been the owner.  It was transferred to

22  a third party and back to TP5.  So it really -- it's

23  with the original owner.

24         THE COURT:  Well, it was transferred back to

25  TP5 in order, apparently to facilitate the use of the

1    stay resulting from the filing of this case.  Is there

2    any fact that I would look to that would cause me to

3    reach a different conclusion?

4                MR. ELAM:  Not before you, Your Honor.

5                THE COURT:  Understood.  I think in light of

6    all the facts of the case, including the background,

7    the transfers of the property, the existence of the

8    other case, Mr. Siskin's case with Judge Hyman, which

9    is obviously not disputed because it's not disputable,

10   and the nature of the obligation, the time period, the

11   value of the property conceded by the debtor, for all

12   those reasons I would find that there be cause for

13   relief from stay in any case.

14               And although I believe if you read Section

15   362(d)(4) closely, you have to take into account every

16   word and provision in order for it to fit this

17   particular set of circumstances, because Mr. Siskin

18   actually did not have title to the property, but he,

19   nonetheless, used this bankruptcy in a manner intended

20   to hinder, delay the efforts of this secured creditor,

21   and then caused the filing of this case with the

22   transfer of the property into the debtor at the last

23   moment in order to again, prevent the foreclosure.

24               I believe that 362(d)(4) also applies, and

25   I will grant relief under that provision on a

Page 12

1   prospective basis.  You may submit a proposed order.

2            MR. BRUCKMAN:  Thank you, Your Honor.

3            MR. ELAM:  Thank you, Your Honor.

4            THE COURT:  Thank you, gentlemen.

5            (The proceedings were concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 13

1                          C E R T I F I C A T E

2

3    The State of Florida       )

4    County of Palm Beach       )

5

6              I, JACQUELYN ANN JONES, Court Reporter,

7    certify that I was authorized to and did

8    stenographically report the foregoing hearing; and

9    that the transcript is a true record of my

10   stenographic notes.

11             I further certify that I am not a relative,

12   employee, attorney or counsel of any of the parties,

13   nor am I a relative or employee of any of the parties'

14   attorney or counsel connected with the action, nor am

15   I financially interested in the action.

16

17             In witness whereof I have hereunto set my

18   hand and seal this  3rd  day of  October, 2013.

19

20                    _____

21                            JACQUELYN JONES

22                            Commission DD 853019

23                            Expires Feb 18, 2017

24

25

**OUELLETTE & MAULDIN  COURT REPORTERS, INC.**
**(305) 358-8875**